Woodrow and Betty FREY, Appellants

v.

Gerald Dean WOODARD, Joe
McCracken and the United
States of America.

No. 84–1105.

United States Court of Appeals,
Third Circuit.

Argued Sept. 13, 1984.

Decided Nov. 19, 1984.

Charles J. Hair, Frank J. Madey (argued), Thomas & Jordan, Allentown, for appellants.

Jackson M. Sigmon, Michael P. Shay, Richard E. Sante, Jr. (argued), Sigmon & Ross, P.C., Bethlehem, Pa., for appellee, Gerald Dean Woodard.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, James G. Sheehan, Asst. U.S. Atty. (argued), Philadelphia, Pa., for U.S.

Before GIBBONS and GARTH, Circuit Judges, and ROSENN, Senior Circuit Judge.

**OPINION OF THE COURT**

GIBBONS, Circuit Judge:

Woodrow and Betty Frey appeal from a summary judgment in favor of the defendants in their action against Gerald Dean Woodard, Joe McCracken, and the United

States seeking compensation for personal injuries the Freys incurred in an automobile accident. The Freys, pedestrians, were struck by a vehicle driven by Woodard, a civilian, after crossing in front of a vehicle owned by the United States driven by McCracken, a United States Marine on active duty. The Freys alleged in their complaint that both Woodard and McCracken were negligent. The district court held that on the undisputed facts, under the law of North Carolina where the accident occurred, neither could be found to be negligent. Since under the Federal Tort Claims Act the liability of the United States for torts of its agents is determined by the law of the state in which the accident occurred, the court entered judgment in favor of all defendants. 28 U.S.C. § 2671 *et seq.* (1982). See 565 F.Supp. 386. The Freys contend that the court erred in holding that under North Carolina law McCracken could not be found negligent, and thus that the judgment in favor of the United States must be reversed.[1] We reverse and remand for trial.

## I.

### The Undisputed Facts for Purpose of Summary Judgment

On April 21, 1977, Mr. and Mrs. Frey attempted unsuccessfully, in Jacksonville, North Carolina, to walk across U.S. 17, a six lane north-south highway. Proceeding from west to east at a point south of a traffic signal, they safely crossed three lanes of southbound traffic to a center median divider. When they arrived at the median divider northbound traffic was in the process of stopping in response to a red light. The signal at the intersection, however, permitted traffic in the easternmost northbound lane to proceed to make a right hand turn. The Freys crossed the westerly northbound lane closest to the median divider, walking between stopped cars in that lane. In the center northbound lane they encountered the Marine Corps truck driven by McCracken. He motioned to them, and indicated verbally that they could proceed safely in front of that truck. While the Freys were passing between the front of the Marine Corps truck and the vehicle stopped ahead of it, the truck bucked forward. The Freys, fearing that they might be pinned between the truck and the vehicle ahead of it, leaped into the easternmost northbound lane and were struck by Woodard's car.

## II.

### Timeliness of the Claim against the United States

The trial court held that the Freys' application for administrative consideration of their claim was filed within the time permitted by 28 U.S.C. § 2401(b) (1982). The United States urges that both the application and the interpretation of this statute were incorrect, and that the time bar is a separate ground for affirmance. The statute on which the United States relies provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." *Id.* The parties agree that the claim against McCracken, and thus against the United States, accrued on April 21, 1977. The Freys filed a written administrative claim on Monday, April 23, 1979, by delivering it to a United States Marine Corps recruiting office in Allentown, Pennsylvania. The United States does not contend that this office was an inappropriate federal agency. It contends, however, that the claim was two days late. The trial court concluded that because April 21, 1979 was a Saturday, and because Fed.R.Civ.P. 6(a) governing computation of time in the federal courts excludes Saturday and Sunday, the administrative claim was timely

---

1. The Freys' notice of appeal suggests that they also appeal from the summary judgment in favor of Woodard. See 578 F.Supp. 1206. However, they have not briefed any issues relating to that particular defendant, and we conclude that they have abandoned the appeal insofar as Woodard is concerned. McCracken, individually, is immune by virtue of the Federal Drivers Act. 28 U.S.C. § 2679(b) (1982). Thus the only interested appellee is the United States.

filed. *See Bledsoe v. Department of Housing and Urban Development*, 398 F.Supp. 315 (E.D.Pa.1975) (Rule 6(a) governs computation of time period in 28 U.S.C. § 2401(b)).

■ The United States first contends that the trial court erred in the application of section 2401(b) because the Marine Corps recruiting office in Allentown, Pennsylvania, was open on Saturday, at least until noon. This argument is frivolous. Litigants have no way of knowing which federal offices keep Saturday or Sunday hours, but know well that few do. A federal statute provides that "[a]ll courts of the United States shall be deemed always open for the purpose of filing proper papers, issuing and returning process, and making motions and orders." 28 U.S.C. § 452 (1982). We all know, however, that the clerks' offices close on weekends, and Fed.R.Civ.P. 6(a) provides for the computation of time limits in a manner consistent with that reality. Undoubtedly some district court clerks work on Saturday, just as some federal judges do. This does not suggest, however, that litigants have an obligation to keep track of the work habits of the Clerk in order to comply with the rules governing timely filing. No more should litigants have to keep track of the hours of Marine Corps recruiting offices.

■ Next, the United States contends that by applying the computation rule of Fed.R.Civ.P. 6(a) to the computation of time under 28 U.S.C. § 2401(b) the court offended Fed.R.Civ.P. 82, by utilizing a Rule to expand the jurisdiction of the district court.[2] This contention, while it is in this instance clothed by the government in the mystical garments of sovereign immunity, is also frivolous. Plainly, the federal courts have been authorized by Congress to interpret 28 U.S.C. § 2401(b). The correctness or incorrectness of adopting the standard of Fed.R.Civ.P. 6(a) as a rule of statutory construction for section 2401(b) may be debatable, but the jurisdiction of the federal courts to construe the statute cannot be a matter of serious dispute.

■ Finally, the government urges that the time computation method set forth in Fed.R.Civ.P. 6(a) is an inappropriate method for computing time under section 2401(b). The government's position is that all statutes involving its waiver of sovereign immunity should be given a niggardly interpretation which would deny benefits of the waiver whenever possible. We have been advised by the Supreme Court, however, that we should not regard ourselves as the "self-constituted guardian[s] of the Treasury [to] import immunity back into a statute designed to limit it." *Indian Towing Co., Inc. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955).

Section 2401(b) does not contain a time computation rule. It does not say whether the day of the liability causing event is included or excluded. It says nothing about weekends or holidays at the end of the two year period. Both with its beginning and with its end interpretation is required. Aside from the government's rule of interpretation that the claimant ought always to lose, no more satisfactory rule has been called to our attention than that, approved by Congress, and announced in Rule 6(a). That rule, excluding at the front end the day of the critical event, and excluding at the back end Saturdays, Sundays, and legal holidays, provides certainty, and if uniformly applied, uniformity. It has been adopted by the Supreme Court as the appropriate interpretation of 28 U.S.C. § 2101(c) (1982). *Union National Bank v. Lamb*, 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190 (1949). More weighty reasons than those suggested by the government would be required before we could reject it as an appropriate rule for the interpretation of ambiguous statutes such as section 2401(b).

None of the government's time bar arguments, therefore, persuade us that late fil-

---

**2.** Fed.R.Civ.P. 82 provides in relevant part:
   These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein.

ing of the Freys' administrative claim is a separate ground for affirmance.

### III.

### The Merits

■ Summary judgment was predicated upon what the court considered to be a North Carolina common law rule that a pedestrian, relying on a motorist's signal to proceed, is not relieved of the obligation to keep a proper lookout for traffic in oncoming lanes. No North Carolina law is cited in support of that proposition, but the government urges that North Carolina would follow the "general rule," announced in such cases as *Nolde Brothers, Inc. v. Wray,* 221 Va. 25, 266 S.E.2d 882 (1980); *Government Employees Ins. Co. v. Thompson,* 351 So.2d 809 (La.Ct.App.1977); *Dix v. Spampinato,* 28 Md.App. 81, 344 A.2d 155 (Md.Ct.Spec.App.1975); *Devine v. Cook,* 3 Utah 2d 134, 279 P.2d 1073 (Utah 1955), that a motorist signalling to a pedestrian or another motorist is doing no more than yielding the right of way, rather than signalling that it is safe to proceed across another lane of traffic. The government concedes, however, that North Carolina follows the general rule that a driver is obliged to keep his vehicle under control. Under the pleadings here the Freys could prove and the factfinder might find that McCracken failed to do so, and that the forward lurch of the Marine Corps truck caused them to jump into the easternmost lane of traffic. Moreover, according to the Freys, the verbal and hand signal which McCracken gave could be found by the trier of fact to have been intended and reasonably understood not merely as a waiver of McCracken's right to proceed in the center northbound lane, but as a representation that he could observe the easternmost lane and it could be safely entered.

Where, as here, reasonable minds might differ as to the inference which might be drawn even from the undisputed facts, a summary judgment is improper. *E.g., Bragen v. Hudson County News Co., Inc.,* 278 F.2d 615 (3d Cir.1960); *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung,* 695

F.2d 1294 (11th Cir.1983); *Exnicious v. United States,* 563 F.2d 418 (10th Cir.1977); *Central National Life Ins. Co. v. Fidelity and Deposit Co. of Maryland,* 626 F.2d 537 (7th Cir.1980); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2725 (1983).

### IV.

Since the Freys' administrative claim was timely filed, and since different inferences may be drawn from the undisputed facts, the United States was not entitled to a judgment as a matter of law. The judgment appealed from must be reversed.